ACCEPTED
03-15-00219-CV
5650209
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/12/2015 9:28:01 AM
JEFFREY D. KYLE
CLERK

CAUSE NO. 03-15-00219-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

6/12/2015 9:28:01 AM
JEFFREY D. KYLE
Clerk

## IN THE THIRD COURT OF APPEALS
## AUSTIN, TEXAS

HALLMARK SPECIALTY UNDERWRITERS, INC. and
HALLMARK SPECIALTY INSURANCE COMPANY, Appellants

v.

TEXAS MUTUAL INSURANCE COMPANY, Appellee

From the 98th Judicial District Court, Travis County, Texas

BRIEF OF APPELLANTS HALLMARK SPECIALTY UNDERWRITERS, INC.
and HALLMARK SPECIALTY INSURANCE COMPANY

Wm. David Farmer
State Bar No. 06826470
Chad W. Schreiber
State Bar No. 24085732
CURNEY, FARMER, HOUSE &
OSUNA, P.C.
411 Heimer Road
San Antonio, Texas 78232-4854
Telephone: (210) 377-1990
Facsimile: (210) 377-1065
Email: wdfarmer@cfholaw.com
Email: cschreiber@cfholaw.com

ATTORNEYS FOR APPELLANTS

**ORAL ARGUMENT IS REQUESTED**

## IDENTITIES OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a), Tex. R. App. P., Appellants Hallmark Specialty Underwriters and Hallmark Specialty Insurance Company certify that the following is a complete list of all parties and counsel:

| | | |
|---|---|---|
| (A) | Appellants:<br>(Defendants in Trial Court) | Hallmark Specialty Underwriters, Inc. and Hallmark Specialty Insurance Company |
| | Trial and Appellate Counsel: | Wm. David Farmer<br>State Bar No. 06826470<br>Chad W. Schreiber<br>State Bar No. 24085732<br>CURNEY, FARMER, HOUSE,<br>& OSUNA, P.C.<br>411 Heimer Road<br>San Antonio, Texas 78232<br>Telephone: (210) 377-1990<br>Facsimile: (210) 377-1065 |
| (B) | Appellee:<br>(Plaintiff in the Trial Court) | Texas Mutual Insurance Company |
| | Trial Counsel: | R. Scott Placek<br>State Bar No. 00784769<br>Scott Arnold<br>State Bar No. 00785669<br>Jonathan Chaltain<br>State Bar No. 24079787<br>Arnold & Placek, PC<br>203 East Main Street, Suite 201<br>Round Rock, Texas 78664 |
| | Telephone: | (512) 341-7044 |
| | Facsimile: | (512) 341-7921 |

**TABLE OF CONTENTS**

IDENTITIES OF PARTIES AND COUNSEL .......................................................2

TABLE OF CONTENTS .................................................................................3

INDEX OF AUTHORITIES .............................................................................5

STATEMENT OF THE CASE............................................................................8

STATEMENT REQUESTING ORAL ARGUMENT ...........................................9

RECORD REFERENCES……………………………………………………..9

ISSUE PRESENTED .....................................................................................10

STATEMENT OF FACTS................................................................................11

STANDARD OF REVIEW .............................................................................13

SUMMARY OF THE ARGUMENT ................................................................14

ARGUMENT.................................................................................................15

1.    The Duty of Defense in Texas ........................................................15

2.    Appellants' Cross-Motion For Summary Judgment Established that Appellee's Duty of Defense Was Triggered................................................17

     A. The Underlying Petition explicitly plead that Guzman was an employee of Absolute. .........................................................18

     B. The Underlying Petition contained factual allegations sufficient to establish that Guzman's injury potentially arose out of and in the course of Guzman's employment with Absolute............................19

3.    Appellee's Arguments Concerning the Duty of Defense Misapply and Misinterpret Texas Law ........................................................26

     A. The Underlying Petition's failure to explicitly allege an injury in the course of employment does not negate Appellee's duty to defend..........................................................27

**B. The inference that Guzman was injured in the course of his employment is reasonable as it flows logically from the factual allegations contained within the Underlying Petition.**....................**32**

**CONCLUSION AND PRAYER FOR RELIEF**.....................................................**37**

**CERTIFICATE OF SERVICE** ..............................................................................**39**

**CERTIFICATE OF COMPLIANCE** ....................................................................**39**

**APPENDIX** ...........................................................................................................**40**

# INDEX OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hallman,*
159 S.W.3d 640 (Tex. 2005) ...................................................................... 22, 32

*Argonaut Sw. Ins. Co. v. Maupin,*
500 S,W.2d 633 (Tex. 1973) ............................................................................18

*Canal Ins. Co.* v. *XMEXTransp., LLC,*
No. EP-13-CV-156-KC, 2014 WL 4385941 (W.D. Tex. Sept. 4, 2014) ...... 29, 30

*Centennial Ins. Co. v. Bailey,*
No. 05-98-00007-CV, 2000 WL 1515158 (Tex. App.—Dallas Oct. 12, 2000, no
pet.) .................................................................................................. 29, 30

*City of Dallas v. Csaszar*,
1999 WL 1268076 (Tex. App.—Dallas Dec. 30, 1999, pet. denied)...... 23, 24, 30

*D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.,*
300 S.W.3d 740 (Tex. 2009) ............................................................................15

*Deatherage v. Int'l Ins. Co.,*
615 S.W.2d 181 (Tex. 1981) ............................................................................20

*Emp'rs Mut. Cas. Co.* v. *Northern Ins. Co.,*
No. 3:08-CV-1498-G, 2010 WL 850243 (N,D. Tex. Mar. 11, 2010)........... 25, 31

*Essex Ins. Co. v. Hines,*
358 Fed. Appx. 596 (5th Cir. 2010) ............................................................. 31, 32

*Fidelity & Guar. Ins. Inc.* v. *McManus,*
633 S.W.2d 787 (Tex. 1982) .................................................................. 16, 29, 36

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000) ............................................................................13

*Gehan Homes, Ltd.* v. *Emp'rs Mut. Cas. Ins. Co.,*
146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied) ......................... 19, 22, 31

*GEICO Gen. Ins. Co.* v. *Austin Power, Inc.,*
357 S.W.3d 821 ............................................................................... 22, 28, 31

*Gen. Star Indent. Co. v. Gulf Coast Marine Assocs., Inc.*,
252 S.W.3d 250 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ....... 26, 31

*Gilbane Guilding Co. v. Admiral Ins. Co.*,
664 F.3d 589 (5th Cir. 2011) ...................................................................... 33, 34

*Gomez v. Allstate Tex. Lloyds,*
241 S.W.3d 196 (Tex. App—Fort Worth 2007, no pet.) ...................................26

*Gore Design Completions, Ltd.* v. *Hartford Fire Ins. Co.,*
538 F.3d 365 (5th Cir. 2008) ...................................................................... 17, 29

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,*
 197 S.W.3d 305 (Tex. 2006) ........................................................................... *passim*
*Gulf Coast Marine Assocs., Inc.,*
 252 S.W.3d 450 ............................................................................................. 25, 31
*Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,*
 387 S.W.2d 22 (Tex. 1965) ............................................................................. *passim*
*Hochheim Prairie Cas. Ins. Co. v. Appleby,*
 255 S.W.3d 146 (Tex. App.—San Antonio 2008, pet. dism'd) ............................ 26
*Indian Harbor Ins. Co. v. KB Lone Star, Inc.,*
 No. H-ll-CV-1846, 2012 WL 3866858 (S.D. Tex. Sept. 5, 2012) ....................... 31
*Jones v. Strauss,*
 745 S.W.2d 898 (Tex. 1988) .............................................................................. 13
*King v. Dallas Fire Ins. Co.,*
 85 S.W.3d 185 (Tex. 2002) .......................................................................... 15, 16, 36
*Liberty Mut. Ins. Co. v. Graham,*
 473 F.3d 596 (5th Cir. 2006) ............................................................................. 25
*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines,*
 939 S.W.2d 139 (Tex 1997) ............................................................................... 17
*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Nat'l Convenience Stores, Inc.,*
 891 S.W.2d 20 (Tex. App.—San Antonio 1994, no writ) ..................................... 24
*Nautilus Ins. Co. v. Nevco Waterproofing, Inc.,*
 Civ. A. H-04-2986, 2005 WL 3088608 (S.D. Tex. Jul. 11, 2005) ................... 27, 28
*Provident Life & Accident Ins. Co. v. Knott,*
 128 S.W.3d 211 (Tex. 2003) .............................................................................. 13
*St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.-Tex.,*
 249 F.3d 389 (5th Cir. 2001) ............................................................................. 27
*St. Paul Ins. Co. v. Tex. Dep't of Transp.,*
 999 S.W.2d 881 (Tex. App.—Austin 1999, pet. denied) ................................. 16, 28
*Stumph v. Dallas Fire Ins. Co.,*
 34 S.W.3d 722 (Tex. App.—Austin 2000, no pet.) .............................................. 19
*Texas Workers' Compensation Ins. Fund v. Rodriguez,*
 953 S.W.2d 765 ......................................................................................... 20, 33
*Texas Emp. Ins. Ass'n v. Andrews,*
 110 S.W.2d 49 (Tex. Comm'n App. 1937) ................................................... 20, 22
*Tri-Coastal Contractors, Inc. v. Hartford Underwriters, Ins. Co.,*
 981 S.W.2d 861 ............................................................................................... 16
*Trinity Univ. Ins. Co. v. Cowan,*
 945 S.W.2d 819 (Tex. 1997) ......................................................................... 16, 36
*Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,*
 939 S.W.2d 139 (Tex, 1997) ......................................................................... 16, 27

*Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P,*
267 F. Supp. 2d 601 (E.D. Tex. 2003) .....................................................28

**Rules**

Tex. R. App. P. 38.1.............................................................................2, 7
Tex. R. App. P. 39.1.................................................................................8
Tex. R. App. P. 9.4.................................................................................38
Tex. R. Civ. P. 166(a) ...........................................................................13
Tex. R. Civ. P. 65..................................................................................16

## STATEMENT OF THE CASE

Pursuant to Rule 38.1(d) Tex. R. App. P., Appellants submit this Statement of the Case. This case arises out of an action for declaratory judgment filed by Appellee Texas Mutual Insurance Company, which sought a determination regarding whether Appellee's duty of defense under Policy No. SBP-0001227402 20130809, issued to Absolute Oil Field Services, LLC for the policy period of 08/09/13 to 08/09/14, was triggered as it relates to the following lawsuit: Cause No. DC-14-149; *Jose Guzman v. Romaine Llewelyn, et al.*; in the 381st District Court of Starr County, Texas (the "Underlying Lawsuit"). (CR at 3). Appellee and Appellants subsequently filed cross motions for summary judgment concerning whether Appellee's duty of defense was triggered. (CR at 31, 92)

On or about February 23, 2015, the Honorable Amy Clark Meachum signed an Order under Cause No. D-1-GN-14-003789 granting summary judgment in favor of Appellee and denying Appellants' Cross-Motion for Summary Judgment. (CR. at 178). Appellants filed their Notice of Appeal on April 6, 2015.

## REQUEST FOR ORAL ARGUMENT

Appellants make and file this Request for Oral Argument pursuant to Rule 39.1, Tex. R. App. P. Oral argument would aid the decisional process in allowing the parties to emphasize critical points in their arguments as well as to provide clarification or elaboration on any issue of which the Court may request.

## RECORD REFERENCES

The "Clerk's Record" will be cited herein as follows:

(CR at [pg.]).

There is no Reporter's Record that will be referenced in this appeal.

# ISSUE PRESENTED

1. Did the Trial Court Err in Denying Appellant's Cross-Motion for Summary Judgment and Granting Appellee's Motion for Summary Judgment?

## STATEMENT OF FACTS

This appeal arises from a duty of defense insurance coverage lawsuit concerning an event that occurred on or about November 30, 2013, at 285 Private Road 7615, Devine, Medina County, Texas (the "property") when Jose Guzman, an alleged employee of Absolute Oil Field Services, LLC ("Absolute"), was shot while present on the property. (CR at 3). Following this incident, Guzman filed suit seeking damages for personal injury under Cause No. DC-14-149, styled *Jose Guzman v. Romaine Llewelyn, Rocky Hernandez, Absolute Oil Field Services, LLC*, and filed in the 381st Judicial District Court, Starr County, Texas (the "Underlying Lawsuit"). (CR at 12). Guzman's Original Petition (the "Underlying Petition") alleged that, at the time of the accident in question, Absolute maintained its day-to-day operations on the property. (CR at 13). Moreover, the Underlying Petition asserted that Romaine Llewelyn, Guzman's direct supervisor, was present on the property and was in charge of the activities being conducted on the property. (CR at 13–14). The Underlying Pleading provided that Guzman was on Absolute's premises when Rocky Hernandez fired a shotgun at Guzman, striking him and causing serious bodily injury. (CR at 14). At the time of Guzman's injury, Guzman plead that Llewelyn and Hernandez were both employees of Absolute and were acting in the course and scope of their respective employment with Absolute. (CR at 14).

Hallmark insured Absolute under a commercial liability insurance policy featuring Policy No. TXE300190-02 for the policy period of 08/08/13 to 08/08/14. After the Underlying Lawsuit was filed and tendered to Hallmark, Hallmark assumed the defense of Absolute under reservation of rights and continues to defend Absolute at this time. Additionally, TMIC also insured Absolute under a workers' compensation/employer's liability insurance policy featuring Policy No. SBP-0001227402 20130809 for the policy period of 08/09/13 to 08/09/14 (the "TMIC Policy"). (CR at 52).

On or about September 12, 2014, Hallmark forwarded correspondence to TMIC demanding that TMIC share in the defense of the mutual insured in the Underlying Lawsuit and contribute those defense costs owed under the TMIC Policy. Subsequently, TMIC filed its declaratory action seeking a determination from the trial court that TMIC owed no duty of defense to Absolute under the TMIC policy for those allegations made in the Underlying Lawsuit. (CR at 3). TMIC then moved for Summary Judgment as to its duty of defense, and Hallmark filed a Cross-Motion for Summary Judgment asserting that TMIC's duty of defense was triggered. (CR at 31, 92). On or about February 23, 2015, the Honorable Amy Clark Meachum granted TMIC's Motion for Summary Judgment and denied Hallmark's Cross-Motion, leading to this appeal. (CR. at 178).

## STANDARD OF REVIEW

An appellate court reviews a grant of summary judgment *de novo*, applying the same standard as the district court. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is appropriate only if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Id*. The party with the burden of proof must prove it is entitled to judgment by establishing each element of its claim or defense as a matter of law, or by negating an element of a claim or defense of the opposing party as a matter of law. Tex. R. Civ. P. 166(a). When, as is the case at present, both parties moved for summary judgment and the trial court grants one motion and denies the other, the appellate court may determine all questions presented. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). "The reviewing court should render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## SUMMARY OF THE ARGUMENT

The trial court erred in granting Appellee's Motion for Summary Judgment and denying Appellants' Cross-Motion for Summary Judgment regarding whether Appellee's duty of defense under the TMIC Policy was triggered by those allegations made in the Underlying Lawsuit because the Underlying Petition alleged specifically that Guzman was an employee of Absolute and contained sufficient factual allegations for the trial court to conclude that Guzman's injury potentially arose out of and in the course of Guzman's employment with Absolute under the eight corners doctrine. In addition, in arguing that the duty of defense under the TMIC Policy was not triggered, Appellee's contentions misapplied and/or misinterpreted Texas law as it relates to both the eight corners doctrine and the duty of defense.

## ARGUMENT

Appellant's position in this case is that the trial court erred in granting Appellee's Motion for Summary Judgment as to Appellee's duty of defense under the TMIC Policy for those allegations made in the Underlying Lawsuit and in denying Appellants' Cross-Motion for Summary Judgment as to same. The critical issue in this case concerns whether the Underlying Petition contained sufficient factual allegations for the trial court to conclude under the eight corner's doctrine that the injury sustained by Guzman, at least potentially, arose out of and in the course of his employment with Absolute as required under the TMIC Policy. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (requiring an insurer to defend in any lawsuit that "alleges and seeks damages for an event *potentially* covered by the policy") (emphasis added).

### 1.     The Duty of Defense in Texas.

Under Texas law, an insurer has two distinct and separate duties under a liability insurance policy; (1) the duty to defend its insured in a lawsuit against allegations that potentially state a claim within the policy coverage; and (2) the duty to indemnify the insured as a result of any claim, judgment or settlement that is actually covered by the policy. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). The sole issue on appeal concerns whether Appellee owes a duty of defense under the TMIC Policy for those allegations contained in the Underlying

Lawsuit and whether the trial court's actions in denying Appellants' Cross-Motion for Summary Judgment and granting Appellee's Motion for Summary Judgment were in error.

In determining whether the facts of any given case obligate the carrier to provide a defense, Texas courts follow the "eight corners" rule (also known as the "complaint allegation" rule), which requires the examining court to look strictly to the factual allegations in the underlying pleading and the language of the policy when determining whether a defense is owed. *King,* 85 S.W.3d at 187; *Trinity Univ. Ins. Co.* v. *Cowan,* 945 S.W.2d 819, 821 (Tex. 1997); *Fid & Guar. Ins. Inc.* v. *McManus,* 633 S.W.2d 787, 788 (Tex. 1982). The defense obligation is determined by construing the latest amended pleading. *St. Paul Ins. Co. v. Tex. Dep't of Transp.,* 999 S.W.2d 881, 883 (Tex. App.—Austin 1999, pet. denied) (citing Tex. R. Civ. P. 65) (stating that the amended pleading takes the place of the original).

In assessing the factual allegations within an underlying pleading, the allegations are considered without regard to their truth or falsity and without reference to extrinsic facts. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 308 (Tex. 2006). Extrinsic evidence cannot be considered when evaluating whether a defense obligation is triggered. *GuideOne,* 197 S.W.3d at 308; *see generally Tri-Coastal Contractors, Inc.* v. *Hartford*

*Underwriters, Ins. Co.,* 981 S.W.2d 861 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The Texas Supreme Court has continually reaffirmed this well-established rule, hinting that only a limited and narrow exception applies, which is not present in this case, *GuideOne,* 197 S.W.3d at 308.

The Supreme Court of Texas has explained the eight corners rule as it relates to the duty of defense in the following way:

> Where the petition does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially,* a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Nat'I Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex, 1997) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex. 1965)).

In other words, Texas courts must interpret the allegations in an underlying petition liberally and resolve in the insured's favor any doubts regarding whether the allegations trigger a defense by the insurer. *Id.* To put it plainly, "[w]hen in doubt, defend." *Gore Design Completions, Ltd.* v. *Hartford Fire Ins. Co.,* 538 F.3d 365, 369 (5th Cir. 2008).

### 2. Appellants' Cross-Motion For Summary Judgment Established that TMIC's Duty of Defense Was Triggered

Initially, Appellants' seek to establish that Appellants were entitled to summary judgment under Texas law regarding whether Appellee's duty of defense was

triggered under the TMIC Policy. As was set forth in Appellants' Cross-Motion for Summary Judgment, Appellants were entitled to summary judgment because: (1) the Underlying Petition alleges specifically that Guzman was an employee of Absolute; and (2) the Underlying Petition contains sufficient factual allegations to allow the Court to infer Guzman's injury potentially arose out of and in the course of employment under the eight corners doctrine.

### A. The Underlying Petition explicitly plead that Guzman was an employee of Absolute.

Under the TMIC Policy, in order for Appellee's duty of defense to be triggered, the Underlying Petition was required to contain factual allegations that established Guzman's status as an employee of Absolute. (CR at 66, 67). In the present case, the factual allegations contained within the Underlying Petition explicitly plead in the alternative that Guzman was an employee of Absolute. (CR at 13). Under the eight corners doctrine, the trial court was required to take this allegation as true for the purposes of assessing Appellee's duty of defense. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 308 ("[A]n insurer's duty to defend is determined by the third-party plaintiffs pleadings, considered in light of the policy provisions, *without regard to the truth or falsity of those allegations.")*(emphasis added); *Argonaut Sw. Ins. Co. v. Maupin,* 500 S,W.2d 633, 636 (Tex. 1973) ("The duty to defend does not depend on what the

facts are; or what might be determined finally by the trier of the facts. It depends only on what the facts are alleged to be."").

Although the Underlying Pleading also asserts multiple alternative theories regarding Guzman's status on the property (i.e., that Guzman was present as an employee, independent contractor, or invitee), Texas law is clear that "[a]lternative allegations . . . will not defeat the duty to defend if combined with allegations that *would* trigger coverage." (CR at 13); *see Gehan Homes, Ltd.* v. *Emp'rs Mut. Cas. Ins. Co.,* 146 S.W.3d 833, 843 (Tex. App.—Dallas 2004, pet. denied); *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 729 (Tex. App.—Austin 2000, no pet.). Therefore, for purposes of assessing the duty of defense under the TMIC Policy, this initial burden was met regarding Guzman's status as an employee.

### B. The Underlying Petition contains factual allegations sufficient to establish that Guzman's injury potentially arose out of and in the course of Guzman's employment with Absolute.

In addition to the above, in order for a duty of defense to be triggered under the TMIC Policy, the factual allegations within the Underlying Pleading must have established that Guzman's bodily injury potentially "[arose] out of and in the course of the injured employee's employment." (CR at 66, 67). Under Texas law, the phrase "arise out of and in the course of employment" is fulfilled where it is "apparent to the rational mind, upon consideration of all of the circumstances, a causal connection between the conditions under which the work is required to be

performed and the resulting injury" exists. *Texas Emp. Ins. Ass'n* v. *Andrews,* 110 S.W.2d 49, 51 (Tex. Comm'n App. 1937). Further, even where an injury originates "outside the sphere of his employer's control," the injury may still arise out of and in the course of employment where "the conditions under which the work is necessarily performed cause exposure to the risk." *Id.* "Course and scope of employment is not limited to the exact moment when the employee reports to work, the moment when the employee's labors are completed, or the place where work is done." *See Tex. Workers' Compensation Ins. Fund* v. *Rodriguez,* 953 S.W.2d 765, 768 (Tex. App.—Corpus Christi 1997, pet. denied) (citing *Deatherage v. Int'l Ins. Co.,* 615 S.W.2d 181, 183 (Tex. 1981)).

Turning to the four corners of the Underlying Petition, the Petition contains a number of factual allegations that relate to whether Guzman's injuries arise out of and in the course of Guzman's employment with Absolute, which Appellants contend triggered Appellee's duty of defense under the TMIC Policy. Specifically, the Underlying Petition provides:

- ➢ On or about November 30, 2013, Guzman was an employee of Absolute (CR at 13);

- ➢ Guzman was on his employer's premises when he sustained injury (CR at 14);

- ➢ Absolute provided housing accommodations for employees at the premises and used the premises as its headquarters (CR at 13);

➤ Guzman was injured where Absolute "maintained its day to day oilfield business activities" (CR at 13, 14);

➤ "Activities [were] being conducted" on the premises and Romaine Llewelyn, as supervisor for Absolute, was in charge of those activities when the accident occurred (CR at 14);

➤ Guzman was on the company's premises when suddenly and without warning, Rocky Hernandez fired a shotgun at Guzman, striking him and causing him serious bodily injury (CR at 14);

➤ Romaine Llewelyn and Rocky Hernandez were employees of Absolute, acting within the course and scope of their respective employment with Absolute at the time of the injury (CR at 14);

➤ Romaine Llewelyn was Guzman's direct supervisor (CR at 13–14);

➤ Romaine Llewelyn was required to "provide a safe workplace" for Guzman and "adequately supervise the employees under his charge" (CR at 16–17);

➤ Absolute "failed to provide place of employment" to Guzman and failed to make the workplace safe (CR at 16–17); and

➤ Guzman's injury was proximately caused by the failure to provide a safe workplace to Guzman and the failure to adequately supervise the employees on the premises, including Guzman. (CR at 16–17).

When applying the cannon of liberal construction to the above-cited facts, Appellants contend that Appellee's duty of defense under the TMIC Policy is triggered by those allegations contained within the Underlying Petition. The facts cited above clearly establish that an employee of Absolute (Guzman) was injured on company premises while operations were being performed on those premises. (CR at 13–14). Further, the factual allegations note that Absolute and Guzman's direct supervisor, Romaine Llewelyn, did not provide Guzman a safe workplace

and/or adequately supervise their employees, which Guzman claimed proximately caused his injuries. (CR at 16, 17). Despite the fact that the Underlying Pleading is silent as to what Guzman was doing on the premises at the time of his injury, the above-cited factual allegations are sufficient for the Court to determine that Guzman's injury *potentially* arose out of and in the course of his employment. In other words, based on the above factual allegations, "the conditions under which [Guzman's] work [was] necessarily performed [potentially] cause[d] exposure to the risk." *Andrews*, 110 S.W.2d at 51.

Appellants acknowledge that a court may not "imagine factual scenarios which might trigger coverage" but stress that the eight corners doctrine does not require it to "ignore those inferences logically flowing from the facts alleged in the petition." *GEICO Gen. Ins. Co.* v. *Austin Power, Inc.,* 357 S.W.3d 821 (Tex. App.—Houston [14th Dist] 2012, pet. denied) (citing *Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 645 (Tex. 2005)). Moreover, "[i]n construing the allegations of the underlying suit, the pleadings are *strictly construed against the insurer,* and any doubt is resolved in favor of coverage." *Gehan Homes,* 146 S.W.3d at 846 (emphasis added). Therefore, based on the above, the factual allegations contained in the Underlying Petition, at the very least, *potentially* state a covered claim within the TMIC Policy. As such, under Texas law, Appellee's duty of defense was triggered by the factual allegations contained within the Underlying Petition.

In addition to the above, despite Appellee's arguments to the contrary, a pleading that does not specifically allege that an injury arose out of the course and scope of employment may nevertheless trigger the duty of defense where sufficient factual allegations exist that allow a trial court to make that inference. For example, in *City of Dallas* v. *Csaszar*, two police officers were sued for verbally abusing and physically assaulting a third party in violation of federal law. No. 05-99-00208-CV, 1999 WL 1268076, at \*2 (Tex. App.—Dallas Dec. 30, 1999, pet. denied). The officers in turn requested a defense from the City of Dallas, which declined to defend the officers because the underlying complaint failed to "directly and factually allege any basis to assume the officers were acting within the course and scope of their employment." *Id.* at \*3. The insuring agreement at issue was very similar to the TMIC Policy's insuring agreement in the present case, which required the City of Dallas to "indemnify and defend a plan member ... against a loss ... resulting from an act or omission of the plan member during the discharge of his duties and within the scope of his office, employment, or assigned volunteer work with the city." *Id.* at \*4. In concluding the City owed a defense to the officers, the court noted that "[a]dmittedly, the complaint does not expressly allege that [the officers] were acting in within the scope of their employment when the incident occurred." *Id.* However, the court nevertheless held that because it was required to liberally construe the pleadings in favor of coverage and resolve all

doubt in favor of the insured, the "complaint was sufficient to allege that the officers were acting within the course and scope of employment." *Id.; see also Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 23 (Tex. 1965) ("While we have said above that the court is limited to a consideration of the allegations and the insurance policy in determining an insurer's duty to defend, we wish to point out that in considering such allegations a liberal interpretation of their meaning should be indulged.").

Further, in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Nat'l Convenience Stores, Inc.*, the Fourth Court of Appeals considered a situation wherein an insured's employee alleged that her supervisor "took advantage of his supervisory role and used physical superiority to grab or embrace [the employee] during working hours on company premises against her will." 891 S.W.2d 20, 21 (Tex. App.—San Antonio 1994, no writ). Also, during a Christmas party on the insured's property, the employee was physically assaulted by her supervisor. *Id.* The issue before the court was whether the allegations contained within the underlying pleading concerning these events triggered a defense under the insured's commercial liability policy, which excluded injuries "arising out of and in the course of [a claimant's] employment."[1] *Id.* In determining that no duty of

---

[1] The exclusion at issue in *National Union* is essentially the counterpart to the insuring agreement contained within TMIC's Policy and is intended to preclude coverage under a commercial liability policy for risks that fall more squarely under employment liability

defense was owed, the court recognized that "all of the acts alleged that arguably resulted in bodily injury occurred on the defendant company's premises and during office hours or during an office party" and, as such, arose out of and in the course of the claimant's employment with the insured. *Id.*

In the present case, because the four corners of the Underlying Petition clearly state that Guzman was: (1) an employee of Absolute, (2) injured on Absolute's premises while operations were being performed and (3) under the supervision of Romaine Llewelyn when the injury occurred, and alleges that the injury in question occurred because Absolute and/or Llewelyn failed to provide a safe workplace for Guzman, the trial court had more than ample information to conclude that the potential exists that Guzman's injuries arose out of and in the course of his employment with Absolute. As such, because the factual allegations in the Underlying Petition create the potential for coverage to exist, the trial court should have properly resolved all doubts in favor of coverage to conclude that the duty of defense was triggered. *See Liberty Mut. Ins. Co.* v. *Graham,* 473 F.3d 596 (5th Cir. 2006) (noting that Texas law required the court to consider the factual allegations along with any "reasonable inference that flow from the facts alleged"); *Emp'rs Mut. Cas. Co.* v. *Northern Ins. Co.,* No. 3:08-CV-1498-G, 2010 WL

---

coverage like that at issue in this case. The Hallmark policy at issue in this case also contains such an exclusion but, because of the alternative allegations plead by Guzman, Hallmark nevertheless assumed the defense of the insured under reservation of rights.

850243 (N,D. Tex. Mar. 11, 2010) (noting that the subject allegations "are admittedly not a model of clarity" but noting that Texas law requires a defense if allegations potentially support a covered claim); *see also Gen. Star Indent. Co. v. Gulf Coast Marine Assocs., Inc.,* 252 S.W.3d 450 (Tex. App—Houston [14th Dist] 2008, pet. denied); *Hochheim Prairie Cas. Ins. Co. v. Appleby,* 255 S.W.3d 146, 150 (Tex. App.—San Antonio 2008, pet. dism'd); *Gomez v. Allstate Tex. Lloyds,* 241 S.W.3d 196, 204 (Tex. App—Fort Worth 2007, no pet.).

3. **Appellee's Arguments Concerning the Duty of Defense Misapply and Misinterpret Texas Law**

Within Appellee's Motion for Summary Judgment regarding the duty of defense, Appellee argued that defense under the TMIC Policy was not triggered as a result of Guzman's failure to plead that Guzman sustained injury in the course of his employment with Absolute. (CR at 98). Appellee further contended that "the nature of [Guzman's] injury—a shotgun wound— is not one which 'logically flows from' his employment as a[n] oilfield worker" and that no logical inference exists that would support Appellants' position. (CR at 99). However, for the reasons set forth below, Appellee's arguments in this regard read facts into the pleadings and/or misapply or misinterpret Texas law with respect to the duty of defense.

**A. The Underlying Petition's failure to explicitly allege an injury in the course of employment does not negate Appellee's duty to defend.**

Appellee has asserted that the allegations in the Underlying Petition are insufficient to trigger its duty of defense because the pleading fails to allege specifically that Guzman was acting in the course and scope of his employment or that he was engaged in any employment-related activities or furthering his employer's business at the time of the accident. In doing so, Appellee essentially asks that these omissions be treated as affirmative representations in regard to course of employment and ignores the logical inferences created from the remaining facts that were asserted within the Underlying Pleading. Such an argument not only requires the Court to read facts into the pleading, which is prohibited under Texas law, but also presents an overly narrow and incorrect interpretation of the duty of defense.

Contrary to Appellee's contentions, the failure of the Underlying Petition to allege specifically that Guzman was acting in the course and scope of his employment when he sustained injury does not permit Appellee to escape its duty of defense. *See generally Nautilus Ins. Co.* v. *Nevco Waterproofing, Inc.,* Civ. A. H-04-2986, 2005 WL 3088608, at *8 (S.D. Tex. Jul. 11, 2005). Rather, Texas courts have frequently held that "[w]here the complaint does not state facts sufficient to clearly bring the cases within or without coverage, the general rule is

that the insured is obligated to defend if there is *potentially,* a case under the complaint within the coverage of the policy." *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.-Tex.,* 249 F.3d 389, 391-92 (5th Cir. 2001) (quoting *Merchants Fast Motor Lines,* 939 S.W.2d at 141). More specifically, "a third party's pleadings need not allege a specific offense to evoke an insurer's duty to defend." *Id.* (citing *St. Paul Ins. Co.* v. *Tex. Dept. of Tramp.,* 999 S.W,2d 881, 886 (Tex. App.—Austin 1999)).

Therefore, contrary to Appellee's position, the omission of any facts explicitly alleging Guzman sustained injury in the course of his employment could nevertheless trigger a duty of defense if the Court finds that, under the facts pled, Guzman *could have been* injured during the course of his employment with Absolute**.** *See Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P,* 267 F. Supp. 2d 601, 612 (E.D. Tex. 2003) ("[I]f the allegations in the underlying pleadings *could even potentially* trigger coverage, and the allegations do not on their face *conclusively* activate an *exclusion*, then the insurer must defend its insured against the claim.") (emphasis added).

Texas courts have repeatedly rejected Appellee's overly narrow interpretation of the duty of defense as an improper interpretation of the eight corners doctrine. *See e.g., Austin Power Inc.,* 357 S.W.3d at 824 (holding that a failure to allege a specific date of injury does not preclude a court from

determining that a covered loss potentially occurred during the policy period); *see also e.g., Nautilus Ins. Co. v. Nevco Waterproofing, Inc.,* No. Civ. A, H-04-2986, 2005 WL 3088608, at \*8 (S.D. Tex. Jul. 11, 2005) (noting that "longstanding Texas authorities, as interpreted by the Fifth Circuit, mandate the conclusion that [an omission relating to when property damage occurs] is not fatal to [a carrier's] duty to defend."). Indeed, the interpretation presented by Appellee in its Motion for Summary Judgment is in direction opposition to Texas law. Specifically, where a petition does not allege facts that would affirmatively exclude coverage, and where the possibility exists that an injury is covered, a defense is triggered. *See Fidelity & Guar. Ins. Underwriters, Inc.* v. *McManus,* 633 S.W.2d 787, 788 (Tex.1982) ("If the petition *only* alleges facts excluded by the policy, the insurer is not required to defend.") (emphasis added); *Centennial Ins. Co. v. Bailey,* No. 05-98-00007-CV, 2000 WL 1515158 (Tex. App.—Dallas Oct. 12, 2000, no pet.) (not designated for publication) (same). In other words, "when there is doubt, there is a duty to defend." *Gore Designs,* 538 F.3d at 369.

For example, in *Canal Insurance Co. v. XMEX Transport, LLC,* the Western District of Texas recently considered a business auto policy that provided liability coverage only for autos that were "specifically listed" on the policy or that would qualify as a "temporary substitute" auto under the policy. *Canal Ins. Co.* v. *XMEXTransp., LLC,* No. EP-13-CV-156-KC, 2014 WL 4385941, at \*4 (W.D. Tex.

Sept. 4, 2014). Though the underlying pleadings in that case indicated that the vehicle was not specifically described in the policy, the pleading was silent as to whether the vehicle would qualify as a temporary substitute auto. *Id.* at \*4–6. Despite the pleading's affirmative indication that the vehicle was not described in the policy, the court still found that the insurance carrier had a duty to defend under the policy. In reaching this conclusion the court stated that, "[w]hile it is true that none of the three Defendants expressly pleaded that the Truck was being used as a temporary substitute auto, [w]hen the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.'" *Id.* at \*19 (internal citations omitted). In case of doubt as to whether the allegations state a cause of action sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Id.*; *see also Csaszar,* 1999 WL 1268076, at \*4. As further support of its conclusion that the duty of defense had been triggered, the court cited a "highly instructive" Fifth Circuit decision that held that the duty of defense had been triggered under a business auto policy "based *solely on the possibility, not even hinted to in the pleadings*, that the truck was a replacement auto." (emphasis added) *Id.* at 17.

Numerous other courts confronted with situations in which a pleading does not contain specific factual allegations that explicitly trigger coverage have nevertheless found that, where the factual allegations raise the possibility that a covered loss is plead, a defense is owed. *See Indian Harbor Ins. Co. v. KB Lone Star, Inc.,* No. H-ll-CV-1846, 2012 WL 3866858, at *14 (S.D. Tex. Sept. 5, 2012) (citing *Gehan Homes,* 146 S.W.3d at 845–46) (holding "Texas courts have held that a carrier is obligated to defend when the underlying petitions are silent about the time of the damage" so long as coverage is potentially triggered)); *see also Austin Power Inc.,* 357 S.W.3d at 824-25 (same). The Northern District of Texas, in *Employers Mutual Casualty Co.* v. *Northern Insurance Co.,* found that "[e]ven where the allegations of the underlying complaint are not just unclear but seemingly inconsistent, if there is a possible reading of those allegations on which they fall within the scope of the policy, the insurer has a duty to defend." *Emp'rs Mut. Cas. Co.,* 2010 WL 850243 at *5 (N.D. Tex. Mar. 11, 2010); *see also Essex Ins. Co. v. Hines,* 358 Fed. Appx. 596, 598 (5th Cir. 2010) ("So long as it is not unreasonable, an interpretation favoring coverage will be adopted even if an interpretation militating against coverage is *more* reasonable."). In other words, even where a petition does not contain specific allegations explicitly triggering coverage, with respect to the duty to defend, Texas courts are allowed to "draw inferences from the petition that may lead to a finding of coverage." *Gen. Star*

*Indem. Co. v. Gulf Coast Marine Assocs., Inc.,* 252 S.W.3d 450, 456 (Tex. App.—

Houston [14th Dist] 2008, pet, denied).

> **B. The inference that Guzman was injured in the course of his employment is reasonable as it flows logically from the factual allegations contained within the Underlying Petition.**

As discussed above, in determining whether the duty of defense has been triggered, Texas law requires courts to consider not only the specific allegations contained within a pleading, but also any reasonable inferences that may flow from those specific allegations. *Hallman*, 159 S.W.3d at 645. The inference that Guzman's injuries arose out of and in the course of his employment is supported by those multiple factual allegations cited above contained within the Underlying Petition and is therefore clearly not unreasonable as Appellee contends. (CR at 13–14, 16–17).

Appellee argued at length in its Motion for Summary Judgment that it would be unreasonable to infer that Guzman was in the course of his employment at the time he was shot because a wound from a gunshot is not the typical injury one might imagine an oilfield service worker incurring on the job. (CR at 157). Notwithstanding this assertion, as it pertains to the duty of defense, "[s]o long as it is not unreasonable, an interpretation favoring coverage will be adopted even if an interpretation militating against coverage is *more* reasonable." *Hines,* 358 Fed. Appx. at 598. Further, Texas case law demonstrates that an injury suffered from a

completely unexpected cause unrelated to an employee's typical job duties can still arise out of and in the course of employment. For example, in *Texas Workers' Compensation Insurance Fund v. Rodriguez*, an employee for an offshore safety equipment company, was injured while jogging to catch a football during one of his breaks. 953 S.W.2d 765, 767 (Tex. App.—Corpus Christi 1997, pet. denied). His job duties were grinding fiberglass and helping in assembly; tasks wholly unrelated to jogging to catch a football. *Id.* at 766. Still, the Court of Appeals held that his injury was sustained within the course and scope of his employment. *Id.* at 769.

In addition, relying heavily from an opinion issued by the Fifth Circuit, Appellees have also claimed that to find Guzman was within the course of his employment when he was injured would deviate from the eight-corners rule in such a way as to shift the burden of proof onto the party disputing coverage to establish that the pleadings affirmatively negate coverage. (CR at 173). However, the case on which Appellees rely, *Gilbane Building Co. v. Admiral Insurance Co.*, is clearly distinguishable from the one at hand. 664 F.3d 589 (5th Cir. 2011). In *Gilbane*, a general contractor was sued by a construction site worker who was injured after falling from a ladder. *Id.* at 592. The general contractor sought coverage under the employer's commercial general liability policy, but that coverage would only be triggered if the allegations pled that the worker's injuries

were at least partially caused by the employer. *Id.* at 593. Although there was no mention in the pleadings of any sort of negligence on behalf of the employer, the trial court found that coverage was triggered because the possibility existed that negligence on behalf of Parr, the injured employee, acting on behalf of the employer in the course of his job, could have contributed to the worker's injuries. *Id.* at 599. The Fifth Circuit went on to reject this argument on the basis that nothing existed in the pleadings to support such an assumption. *Id.* "Simply put, the petition does not allege *any* facts suggesting that Parr's own negligence could have caused his injuries." *Id.* (emphasis added).

That statement by the court clearly distinguishes *Gilbane* from the case at hand as ample support can be found in the Underlying Petition for the logical inference that Guzman was shot in the course of his employment. The Underlying Petition states that Guzman was an employee of Absolute who was injured on Absolute's premises while business operations were being performed. (CR at 13–14). Further, he was injured by a fellow employee who was acting within the course of his employment at the time and was under the supervision of the workers' shared supervisor who was also acting within the course of his employment at the time of the incident. (CR at 13–14).

Moreover, Appellee has asserted that it would be difficult to imagine a situation in which Guzman could have received a gunshot wound while in the

course of his employment. (CR at 157). However, in reaching that conclusion, Appellee incorrectly places all focus on the nature of the injury, which is of little relevance under Texas law, and ignores all other factual allegations put forth in the Underlying Pleadings and the logical inferences that flow therefrom. When taking the correct approach under Texas law and considering *all* factual allegations put forth, the more difficult situation to imagine is one in which Guzman himself was *not* in the course of his employment when he was (1) injured on the premises of his employer; (2) by another employee acting within the course of his employment; (3) who was under the supervision of the same person who also supervised Guzman himself who was also acting within the course of his employment at the time of the incident. (CR at 13–14).

Thus, in order to arrive at the conclusion that it is unreasonable to infer Guzman was injured in the course of his employment, Appellee must make a complete departure from established Texas law. Appellee has argued that "oilfield service workers do not suffer shotgun wounds as a logical result of their employment." (CR at 157). Therefore, Appellee contends it is unreasonable to infer Guzman was injured in the course of his employment. However, in its very next point of contention, Appellee acknowledges and even uses as support the fact that Guzman's assailant, Rocky Hernandez, was alleged to be within the course and scope of his employment. (CR at 157). Just as oilfield services workers are

unlikely to receive gunshot wounds in the course of employment, they are similarly unlikely to inflict them upon their coworkers. Appellee's contention in this regard is neither reasonable nor logical and demonstrates why Appellee's arguments regarding this issue are incorrect under Texas law. Indeed, determining whether an injury was a logical result of employment is not a standard used to determine whether a duty to defend exists under Texas law. Instead the Court is to take into consideration all factual allegations in the pleadings, taken as true, as well as the reasonable inferences flowing therefrom in determining whether the duty has been triggered. *King,* 85 S.W.3d at 187; *Trinity Univ. Ins. Co.* v. *Cowan,* 945 S.W.2d 819, 821 (Tex. 1997); *Fid & Guar. Ins. Inc.* v. *McManus,* 633 S.W.2d 787, 788 (Tex. 1982).

Here, when considering all factual allegations in the Underlying Pleadings, the inference that Guzman was in the course of his employment at the time of his injury flows logically from multiple specific allegations and is thus not unreasonable, triggering Appellee's duty of defend in the Underlying Lawsuit. As such, the trial court erred in Granting Appellee's Motion for Summary Judgment and denying Appellants' Cross-Motion for Summary Judgment and Appellants ask that this Court reverse the decision of the trial court and render judgment in favor of Appellants' with respect to those grounds contained within Appellants' Cross-Motion for Summary Judgment.

## CONCLUSION AND PRAYER FOR RELIEF

The trial court erred in granting Appellee's Motion for Summary Judgment and denying Appellant's Cross-Motion for Summary Judgment regarding Appellee's duty to defend in the Underlying Lawsuit. The duty to defend was triggered under Appellee's policy because the Underlying Petition shows that Jose Guzman was an employee of Absolute Oilfield who was injured, or at the very least potentially injured, while in the course of his employment.

For these reasons, Appellants Hallmark Specialty Underwriters, Inc. and Hallmark Specialty Insurance Company, pray that the Court reverse the decision of the trial court granting Appellee's Motion for Summary Judgment and denying Appellants' Cross-Motion for Summary Judgment and render judgment that Appellee has a duty to defend in the Underlying Lawsuit. Appellants further pray for attorneys' fees and costs of appeal, together with such other and further relief to which Appellants may be justly entitled.

Respectfully submitted,

CURNEY, FARMER,
HOUSE, & OSUNA, P.C.
411 Heimer Road
San Antonio, Texas  78232-4854
(210) 377-1990 (telephone)
(210) 377-1065 (facsimile)

By: */s/ Wm. David Farmer*
    **Wm. David Farmer**
    State Bar No. 06826470
    Email:  wdfarmer@cfholaw.com
    **Chad W. Schreiber**
    State Bar No. 24085732
    Email:  cschreiber@cfholaw.com

    *Attorneys for Appellants*
    *Hallmark Mutual Insurance*
    *Company and Hallmark*
    *Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on the following by Electronic Filing Service Provider (EFSP), email, hand delivery, facsimile, and/or certified mail, return receipt requested, on the 11th day of June, 2015:

*/s/ Wm. David Farmer*

*Via E-mail:* splacek@arnoldplacek.com
sarnold@arnoldplacek.com
jchaltain@arnoldplacek.com

R. Scott Placek
Scott Arnold
Jonathan Chaltain
Arnold & Placek, PC
203 East Main Street, Suite 201
Round Rock, Texas  78664
Telephone:   (512) 341-7044
Facsimile:   (512) 341-7921

*Trial Attorneys for Appellee Texas Mutual Insurance Company*


## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), I hereby certify that Appellents' Brief contains 6,325 words.

*/s/ Wm. David Farmer*

## **APPENDIX**

Tab 1:   Order granting Appellee's Motion for Summary Judgment and denying Appellants' Cross-Motion for Summary Judgment

Tab 2:   Order granting Appellee's Request for Payment of Attorney's Fees and disposing of all issues between the parties

Tab 3:   Policy No. SBP-0001227402 20130809 issued by Texas Mutual Insurance Company for the policy period 08/09/13 to 08/09/14.

# TAB 1

**ORDER GRANTING APPELLEE'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING APPELLANTS' CROSS-
MOTION FOR SUMMARY JUDGMENT**

CAUSE NO. D-1-GN-14-003789

| | | |
|---|---|---|
| TEXAS MUTUAL INSURANCE CO., | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| v. | § | |
| | § | |
| HALLMARK SPECIALTY | § | 98th JUDICIAL DISTRICT |
| UNDERWRITERS, INC. and | § | |
| HALLMARK SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING TEXAS MUTUAL INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

On this day came on for hearing, Texas Mutual Insurance Company's Motion for Summary Judgment and Hallmark's Cross-Motion for Summary Judgment. The Court, having considered the filings, evidence and arguments of the parties, finds that the Motion should be, in all things, GRANTED. The Court further finds that Hallmark's Cross-Motion for Summary Judgment should be, in all things, DENIED.

It is ORDERED, ADJUDGED and DECREED that Texas Mutual Insurance Company's Motion for Summary Judgment is GRANTED and Hallmark's Cross-Motion for Summary Judgment is DENIED. Therefore, the Court enters the following declaratory judgment in favor of Plaintiff Texas Mutual Insurance Company:

(1) Texas Mutual has no duty to defend Absolute Oil Field in *Jose Guzman v. Romain Llewelyn, et al.*, Cause No. 2DC-14-149 in the 381st Judicial District Court of Starr County, Texas; *as currently pled* and

(2) Texas Mutual has no duty to contribute or share in the defense of Absolute Oil Field with the Defendants in *Jose Guzman v. Romain Llewelyn, et al.*, Cause No. 2DC-14-

149 in the 381ˢᵗ Judicial District Court of Starr County, Texas.

The Court further finds that the parties have agreed to reserve the issue of attorney's fees and costs of suit for a later date.

SIGNED this _23ʳᵈ_ day of _February_, 2015.

_____
Judge Presiding

# TAB 2

**ORDER GRANTING APPELLEE'S REQUEST FOR PAYMENT OF ATTORNEY'S FEES AND DISPOSING OF ALL ISSUES BETWEEN THE PARTIES**

CAUSE NO. D-1-GN-14-003789

| | | |
|---|---|---|
| TEXAS MUTUAL INSURANCE CO., | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| HALLMARK SPECIALTY | § | 98ᵗʰ JUDICIAL DISTRICT |
| UNDERWRITERS, INC. and | § | |
| HALLMARK SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## ORDER GRANTING TEXAS MUTUAL INSURANCE COMPANY'S
## REQUEST FOR PAYMENT OF ATTORNEYS' FEES

On this day came on for hearing, Texas Mutual Insurance Company's Request for Payment of Attorneys' Fees. The Court, having considered the filings, evidence and arguments of the parties, finds that the Request should be, in all things, GRANTED.

Therefore, it is ORDERED, ADJUDGED and DECREED that Texas Mutual Insurance Company is entitled to recover its attorney's fees from Defendants in the amount of $15,028.76 within 14 days of the date of this order. It is further ORDERED, ADJUDGED and DECREED that if the case is appealed to the Austin Court of Appeals, a reasonable fee for the appeal is $20,000; if the case is appealed to the Texas Supreme Court, a reasonable fee for drafting or responding to a Petition for Review is $5,000; and if the petition is granted, a reasonable fee for briefing and argument is and additional $20,500;

This judgment is final, appealable, and disposes of all pending claims between the parties.

All claims not expressly granted are hereby denied.

SIGNED this ____ day of _____, 2015.

_____
JUDGE PRESIDING

# TAB 3

**POLICY NO. SBP-0001227402 20130809 ISSUED BY TEXAS MUTUAL INSURANCE COMPANY FOR THE POLICY PERIOD 08/09/13 TO 8/09/14**



ABSOLUTE OILFIELD SERVICE LLC
PO BOX 2020
SOUR LAKE, TX 77659-2020

SXCHAMBE

UW00001



**TexasMutual®**
Insurance Company

# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

6210 E Highway 290
Austin, Texas 78723-1098

## INFORMATION PAGE

| ITEM 1 | ABSOLUTE OILFIELD SERVICE LLC<br>PO BOX 2020<br>SOUR LAKE, TX 77659-2020 | |
|---|---|---|
| INSURED<br>NAME AND<br>ADDRESS | | **POLICY NUMBER**<br>SBP-0001227302 20130809 |

|  |  |  |
|---|---|---|
| | | Federal Tax ID | 800741849 |
| OTHER WORKPLACES NOT SHOWN ABOVE:<br>see attached schedule of operation.<br>ALDRICH INSURANCE AGENCY INC<br>PO BOX 727<br>SOUR LAKE, TX 77659-0727 | Bureau Number | |
| | Branch | HOUSTON |
| | Renewal of | 0001227302 |
| PRODUCER<br>42114 | Entity | LIMITED LIABILI |
| | Interim Adjustment | |
| | Group | |

**ITEM 2**    The Policy Period is from:   8-09-2013   To:   8-09-2014    12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A.   Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B.   Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3A.
The Limits of our Liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident | $ 1,000,000 | Each Accident |
| Bodily Injury by Disease | $ 1,000,000 | Each Employee |
| Bodily Injury by Disease | $ 1,000,000 | Policy Limit |

C.   Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE

D.   This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**   The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM       $       135.00

| | |
|---|---|
| WAIVER OF SUBROGATION . . . . . . . . . . . . . . . . . . . . . | 3.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS . . . . . . . . . . . . . | 3.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . . . . . . | 141.00 |
| PREMIUM MODIFIED TO REFLECT PREM INCENTIVE OF ( .85 ) . . | 21.00- |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( .81 ) . . | 23.00- |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( ) . . . . | .00 |
| DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . . . . . | .00 |
| ADMIRALTY/FELA OR L & H W . . . . . . . . . . . . . . . . . . | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( ) . . . . . . . . | .00 |
| EXPENSE CONSTANT CHARGE . . . . . . . . . . . . . . . . . . . | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM       $       247.00

MINIMUM PREMIUM      188.00

DEPOSIT PREMIUM      247.00         Countersigned by _____

Issue Date:   7-18-2013

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

# IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your agent.

You may call the Texas Mutual Insurance Company toll-free telephone number for information or to make a complaint at:

## 1-800-859-5995

You may also write to:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

## 1-800-252-3439

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

**Para obtener informacion o para someter una queja:**

Puede comunicarse con su agente.

Usted puede llamar al numero de telefono gratis del Texas Mutual Insurance Company para informacion o para someter una queja al:

## 1-800-859-5995

Usted tambien puede escribir a:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

## 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

UW00003



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    2

NAME AND ADDRESS OF INSURED

ABSOLUTE OILFIELD SERVICE LLC
PO BOX 2020
SOUR LAKE, TX 77659-2020

POLICY NUMBER

SBP-0001227302 20130809

ISSUE DATE

7-18-2013

ITEM 4        ** SCHEDULE OF OPERATIONS **
                  LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|---------------------------------------------------|-------------------------------|--------------------------|
| 42 | 00001 | 8809 | EXECUTIVE OFFICERS NOC-PERFORMING CLERICAL OR OUTSIDE SALESPERSONS DUTIES ONLY | 30,000.00 | .45 | 135.00 |

Total Estimated Standard Premium                                                                      135.00

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                          at 12:01 A.M. standard time, forms a part of

Policy No.    SBP-0001227302 20130809      of the Texas Mutual Insurance Company

Issued to    ABSOLUTE OILFIELD SERVICE LLC                        Endorsement No.

Premium $

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY                    SXCHAMBE      7-18-2013

UW00004


EXTENSION OF INFORMATION PAGE

PAGE    3

NAME AND ADDRESS OF INSURED

ABSOLUTE OILFIELD SERVICE LLC
PO BOX 2020
SOUR LAKE, TX 77659-2020

POLICY NUMBER
SBP-0001227302 20130809

ISSUE DATE
7-18-2013

ITEM 4    ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 9885 | PREMIUM INCENTIVE CREDIT | .85 | 21.00- |
| 42 | 9812 | INCREASED LIMITS 1000/1000/1000 | .02 | 3.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 3.00 |
| 42 | 9887 | SCHEDULE RATE MODIFIER | .81 | 23.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 112.00 |
| | | Total Estimated Annual Premium | | 247.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                          at 12:01 A.M. standard time, forms a part of

Policy No.    SBP-0001227302 20130809    of the Texas Mutual Insurance Company

Issued to    ABSOLUTE OILFIELD SERVICE LLC                    Endorsement No.

Premium $

_____
Authorized Representative

WC000001A (ED. 7-11)         INSURED'S COPY         SXCHAMBE    7-18-2013

UW00005



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## LOCATIONS

EXTENSION OF INFORMATION PAGE

PAGE    4

NAME AND ADDRESS OF INSURED

ABSOLUTE OILFIELD SERVICE LLC
PO BOX 2020
SOUR LAKE, TX 77659-2020

POLICY NUMBER

SBP-0001227302 20130809

ISSUE DATE

7-18-2013

ITEM 1       **     LOCATIONS     **

| LOCATION NUMBER | ADDRESS |
|---|---|
| 00001 | ABSOLUTE OILFIELD SERVICE LLC<br>4806 LITTLE ROCK RD<br>KOUNTZE, TX 77625-6592 |

FEDERAL ID: 800741849.
EFFECTIVE: 8-09-2013    EXPIRES: 8-09-2014

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No.    SBP-0001227302 20130809    of the Texas Mutual Insurance Company

Issued to    ABSOLUTE OILFIELD SERVICE LLC

Premium $

Endorsement No.

_____
Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY              SXCHAMBE    7-18-2013

UW00006


EXTENSION OF INFORMATION PAGE

PAGE     5

| | |
|---|---|
| NAME AND ADDRESS OF INSURED<br><br>ABSOLUTE OILFIELD SERVICE LLC<br>PO BOX 2020<br>SOUR LAKE, TX 77659-2020 | POLICY NUMBER<br>SBP-0001227302 20130809<br><br>ISSUE DATE<br>7-18-2013 |

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|---|---|---|---|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2011 | MUTUAL ENDORSEMENT FORM | 1-01-2012 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | 7-01-2011 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                          at 12:01 A.M. standard time, forms a part of

Policy No.   SBP-0001227302 20130809     of the Texas Mutual Insurance Company

Issued to    ABSOLUTE OILFIELD SERVICE LLC

Premium $

Endorsement No.

_____
Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          SXCHAMBE     7-18-2013

UW00007


## LIMITED REIMBURSEMENT FOR TEXAS EMPLOYEES
## INJURED IN OTHER JURISDICTIONS

### IMPORTANT NOTICE!
### PLEASE READ THIS ENDORSEMENT CAREFULLY

This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§406.071-.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.

Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are not authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.

Part Three Other States Insurance of the policy is deleted and replaced with the following:

I. Limited Reimbursement Provision

A. How this endorsement applies

This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.

1. Bodily injury must arise out of and in the course of the injured employee's temporary employment by you in a state other than Texas.

2. Bodily injury by accident must occur during the policy period.

3. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last injurious exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

4. The employee incurring bodily injury must be eligible for Texas workers' compensation benefits and must make a written election of workers' compensation benefits in the state in which the bodily injury occurred in lieu of Texas workers' compensation benefits. You must send us written notice of such election within 10 days of receiving notice yourself. Failure to provide such notice means any reimbursement will be made in accordance with the Texas Labor Code.

TM-LRC-2008

INSURED'S COPY

UW00008

**B. Reimbursement**

1. We will reimburse you for the amount you have paid as workers' compensation benefits for employees, as defined above, under the workers' compensation law of any state listed in the schedule.

2. We will deduct from the benefits so reimbursed any amounts we have paid as Texas benefits to the employee for the same injury for which the other     jurisdiction's benefits are required.

3. Sections D through G of Part One of the policy will apply to reimbursement provided by this endorsement. Sections A, B, C and H of Part One of the policy will not apply to reimbursement provided by this endorsement.

4. We will reimburse you for reasonable attorney's fees you have paid to defend the injury claim in another jurisdiction.

**II. Exclusions, Limitations and Conditions**

The following conditions apply to the reimbursement afforded by this endorsement:

1. Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2. Reimbursement will be made in Texas.
3. Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
4. This endorsement provides reimbursement only in Texas and fully releases and indemnifies us and holds us harmless from any liability arising from your failure to obtain workers' compensation coverage in another jurisdiction.
5. The reimbursement provided by this endorsement excludes:
   a. bodily injury, including death, to an employee while employed in a jurisdiction where you have secured your obligation under the workers' compensation law by other insurance or by self-insurance;
   b. bodily injury, including death, to an employee while employed in a state where you affirmatively rejected the workers' compensation law; or
   c. fines or penalties arising out of your failure to comply with requirements of the workers' compensation law of any state.

**III. Premium**

The premium basis and rates for work by Texas employees in jurisdictions other than Texas are the same as if the work had been done in Texas.

**IV. Schedule**

Designated States:     All states of the United States of America except North Dakota, Ohio, Washington and Wyoming.

*© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission*

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. SBP-0001227302 20130809       of the Texas Mutual Insurance Company

Issued to  ABSOLUTE OILFIELD SERVICE LLC

DBA:

Premium:       $_____

Endorsement No.

_____
Authorized Representative

TM-LRC-2006

INSURED'S COPY          SXCHAMBE     7-18-2013

UW00009



The named insured ratifies and accepts the terms and conditions of the policy to which this endorsement is attached as well as the terms listed below.

1. Policies that are on an interim reporting basis may not be financed. Texas Mutual Insurance Company may cancel coverage if it determines that interim reports have been financed in violation of this prohibition.

2. The named insured certifies that the payroll established by classification codes in the application for coverage is a true and reasonable estimate for the period of coverage requested and will promptly report any material change in payroll exposures to Texas Mutual Insurance Company. Texas Mutual Insurance Company may adjust premium for the policy upon receipt of such information.

3. The named insured and its affiliates permit Texas Mutual Insurance Company access to all of their employment information and records filed with the Texas Workforce Commission, and hereby waive the confidentiality of such information and records.

4. All obligations of the named insured are performable in Travis County, Texas and said county will be the legal venue for any suit arising from this contract. Maintenance of an action in Travis County, Texas does not work an injustice to the named insured and is in the interest of the parties, and transfer of the action would work an injustice to the parties. Any suits must be filed in Travis County, Texas.

5. If the insured defaults on payment of any premiums due under any policy issued, then all premiums due and unpaid shall become due and payable at Texas Mutual Insurance Company's offices in Austin, Travis County, Texas.

6. All information supplied to Texas Mutual Insurance Company by the named insured or its agent in the application for insurance or otherwise is true and complete; nothing material regarding its operations has been omitted; and the named insured intended Texas Mutual Insurance Company to rely on such information in issuing this policy. The named insured assumed the duty of full disclosure of such information and that Texas Mutual Insurance Company has no duty to inquire further regarding such information. The named insured is not violating any provision of the Texas Workers' Compensation Act and is not subcontracting any work to a subcontractor with the intent to avoid liability as an employer.

7. The named insured will not cause any certificate of insurance to be issued for the purpose of satisfying the workers' compensation insurance requirements of any third party, including any governmental entity, unless the remuneration paid to the individual workers performing such work is disclosed to Texas Mutual Insurance Company and included in the premium calculation of the named insured. If the named insured causes a certificate of insurance to be issued for the purpose of allowing the employees of a person other than the named insured to perform work at any job site where workers' compensation is required, and such workers are not covered by workers' compensation insurance, such action by the named insured is a material breach of this insurance policy and constitutes fraud upon Texas Mutual Insurance Company.

8. The named insured has appointed the agent whose name appears on the application as its agent in fact and agrees that any representations made on its behalf by that agent are the representations of the named insured, unless there is an express written agreement between Texas Mutual Insurance Company and the agent that the agent acts on behalf of Texas Mutual Insurance Company.

9. Acceptance of this policy with all endorsements and tender of the deposit premium constitute the insured's agreement with all of the terms and conditions thereof, and the insured's acknowledgement of the obligation to pay all premiums due for the policy.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          at 12:01 A.M. standard time, forms a part of

Policy No. SBP-0001227302 20130809     of the Texas Mutual Insurance Company

Issued to ABSOLUTE OILFIELD SERVICE LLC

Endorsement No.

Premium $

_____
Authorized Representative

UW00010



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

TM-MV-2011

## MUTUALS – MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of Texas Mutual Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, 6210 E Highway 290, Austin, Texas, on the fourth Tuesday of June in each year, at 1:00 o'clock p.m. each year unless the Board of Directors of Texas Mutual Insurance Company specifies otherwise.

## MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distributions of dividends so fixed and determined.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No.   SBP-0001227302  20130809     of the Texas Mutual Insurance Company

Issued to   ABSOLUTE OILFIELD SERVICE LLC            Endorsement No.

Premium $

_____
Authorized Representative

UW00011


## TEXAS TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.
b. The act is violent or dangerous to human life, property or infrastructure.
c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.
d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means, any loss resulting from an act of terrorism (including an act of war, in the case of workers' compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

TM-TRIPRA-2008

INSURED'S COPY

UW00012

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.
2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.
3. The premium charged for the coverage for Insured Losses under this policy is included in the amounts shown in Item 4 of the Information Page or in the Schedule in the Texas Terrorism Premium Endorsement. (TM-TPE-2008), attached to this policy.

"© 2006, National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. SBP-0001227302  20130809    of the Texas Mutual Insurance Company

Issued to   ABSOLUTE OILFIELD SERVICE LLC

DBA:

Premium:      $_____

Endorsement No.

_____
Authorized Representative

TM-TRIPRA-2008

UW00013



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

**TM-TPE-2008**
(Ed. 1-08)

### TEXAS TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of terrorism.

Your policy provides coverage for workers' compensation losses caused by acts of terrorism, including workers' compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of terrorism" is defined as:

    a. Any act that is violent or dangerous to human life, property or infrastructure; and

    b. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers' compensation losses caused by an act of terrorism is shown in Item 4 of the Information Page or in the Schedule below.

**Schedule**

| State | Rate per $100 of payroll |
|-------|--------------------------|
| Texas | $0.00 |

"© 2006, National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. SBP-0001227302 20130809     of the Texas Mutual Insurance Company

Issued to ABSOLUTE OILFIELD SERVICE LLC

DBA:

Premium: $_____

Endorsement No.

_____
Authorized Representative

TM-TPE-2008

INSURED'S COPY     SXCHAMBE    7-18-2013

UW00014


In return to the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the Insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE – WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

WC0000008 (ED. 07/11)

INSURED'S COPY

UW00015

**F. Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

**G. Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**H. Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

# PART TWO – EMPLOYERS LIABILITY INSURANCE

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this employers liability insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

UW00016

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356a), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Safety and Health Act (30 USC Sections 801-945), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member or the crew of any vessel;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

UW00017

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**H. Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

**I. Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE -- OTHER STATES INSURANCE

**A. How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR -- YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE -- PREMIUM

**A. Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

UW00018

D. **Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E. **Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

F. **Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

G. **Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX – CONDITIONS

A. **Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

B. **Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

C. **Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

E. **Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

UW00019



**WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 00 04 06**

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

### Estimated Eligible Premium

|   | | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|---|
| 1. | State | | | | |
|   | TEXAS | 0.00 | 8.40 | 10.50 | 11.00 |

2. Average percentage discount     0.00

3. Other Policies:

4. If there are no entries in Items 1, 2, and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

· This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          at 12:01 A.M. standard time, forms a part of

Policy No.   SBP-0001227302 20130809   of the Texas Mutual Insurance Company

Issued to   ABSOLUTE OILFIELD SERVICE LLC

Premium $

Endorsement No.

**Authorized Representative**

WC000406 (ED. 1-94)

INSURED'S COPY        SXCHAMBE    7-18-2013

UW00020

 
## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

### GENERAL SECTION

B.  **Who Is Insured is amended to read:**

You are insured if you are an employer named in item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D.  **State is amended to read:**

State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE - WORKERS' COMPENSATION INSURANCE

E.  **Other Insurance is amended by adding this sentence:**

This section only applies if you have other insurance or are self-insured for the same loss.

F.  **Payments You Must Make**

This section is amended by deleting the words "workers' compensation" from number 4.

H.  **Statutory Provisions**

This section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

C.  **Exclusions**

Sections 2 and 3 are amended to add:

This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.

Section 6 is amended to read:

6.  Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D.  **We Will Defend**

This section is amended by deleting the last sentence.

UW00021

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:

6. Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. **Our Manuals** are amended by adding the sentence:

In this part, "our manuals" means manuals approved or prescribed by the State Board of Insurance.

C. **Remuneration**

Number 2 is amended to read:

2. All other persons engaged in work that would make us liable under Part One (Workers' Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers' compensation insurance.

E. **Final Premium**

Number 2 is amended to read:

2. If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

## PART SIX - CONDITIONS

A. **Inspection** is amended by adding this sentence:

Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be canceled by us.

C. **Transfer of Your Rights and Duties** is amended to read:

Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D. **Cancellation** is amended to read:

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.

3. Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal become effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew because of:

   a. Fraud in obtaining coverage;

   b. Misrepresentation of the amount of payroll for purposes of premium calculation;

   c. Failure to pay a premium when payment was due;

UW00022

d. An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply within a reasonable period with recommendations designed to reduce a hazard that is under your control;

e. A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.

4. If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

Part Seven has been added as follows:

## PART SEVEN - OUR DUTY TO YOU FOR CLAIM NOTIFICATION

A. **Claims Notification**

We are required to notify you of any claim that is filed against your policy. Thereafter we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of an administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

COMPLAINT NOTICE: SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No. SBP-0001227302 20130809 of the Texas Mutual Insurance Company

Issued to ABSOLUTE OILFIELD SERVICE LLC

Premium $

Endorsement No.

_____
Authorized Representative

WC 42 03 01 F (1 – 01 – 2000)                    Page 3 of 3

INSURED'S COPY          SXCHAMBE     7-18-2013

UW00023

 **TexasMutual**® TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY
Insurance Company

WC 42 04 07

## TEXAS – AUDIT PREMIUM AND
## RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

### PART FIVE - PREMIUM

D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers' compensation law is not valid. The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                          at 12:01 A.M. standard time, forms a part of

Policy No. SBP–0001227302  20130809  of the Texas Mutual Insurance Company

Issued to  ABSOLUTE OILFIELD SERVICE LLC

Premium $

Endorsement No.

_____
Authorized Representative

WC420407 (Ed. 3-23-2002)

INSURED'S COPY          SXCHAMBE     7-18-2013

UW00024



## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

Schedule

1. (   )   Specific Waiver
           Name of person or organization


   ( X )   Blanket Waiver
           Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.


2. Operations:   ALL TEXAS OPERATIONS


3. Premium

   The premium charge for this endorsement shall be __2.00__ percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.


4. Advance Premium      INCLUDED, SEE INFORMATION PAGE.


This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                          at 12:01 A.M. standard time, forms a part of

Policy No.  SBP-0001227302 20130809  of the Texas Mutual Insurance Company

Issued to   ABSOLUTE OILFIELD SERVICE LLC

                                                  Endorsement No.

Premium $

                                                  _____
                                                  Authorized Representative

WC420304A (ED. 1-01-2000)

INSURED'S COPY          SXCHAMBE     7-18-2013

UW00025



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

    Location #01 is amended per attached.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     August 9, 2013       at 12:01 A.M. standard time, forms a part of

Policy No.   SBP-0001227302 20130809     of the Texas Mutual Insurance Company

Issued to    ABSOLUTE OIL FIELD SERVICES LLC

Premium $       0.00

Endorsement No.     2

_____
Authorized Representative

WC990301 (ED. 1-94)

INSURED'S COPY        LXHAMILT    8-12-2013

UW00026



EXTENSION OF INFORMATION PAGE

PAGE    2

NAME AND ADDRESS OF INSURED

ABSOLUTE OIL FIELD SERVICES LLC
PO BOX 2020
SOUR LAKE, TX 77659-2020

POLICY NUMBER

SBP-0001227302 20130809

ISSUE DATE

8-12-2013

ITEM 1    **    LOCATIONS    **

| LOCATION NUMBER | ADDRESS |
|---|---|
| 00001 | ABSOLUTE OIL FIELD SERVICES LLC 18527 HIGHWAY 326 N SOUR LAKE, TX 77659-5775 |

FEDERAL ID: 800741849
EFFECTIVE: 8-09-2013    EXPIRES: 8-09-2014

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    **August 9, 2013**    at 12:01 A.M. standard time, forms a part of

Policy No.    SBP-0001227302 20130809    of the Texas Mutual Insurance Company

Issued to    ABSOLUTE OIL FIELD SERVICES LLC

Premium $    0.00

Endorsement No.    2

**Authorized Representative**

WC000001A (ED. 7-11)

INSURED'S COPY    LXHAMILT    8-12-2013

UW00027

 **TexasMutual**®
InsuranceCompany

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

The named insured is amended as follows:

ABSOLUTE OIL FIELD SERVICES LLC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     **August 9, 2013**     at 12:01 A.M. standard time, forms a part of

Policy No.   SBP-0001227302 20130809     of the Texas Mutual Insurance Company

Issued to   ABSOLUTE OIL FIELD SERVICES LLC

Premium $      0.00

Endorsement No.    1

_____
**Authorized Representative**

WC990301 (ED. 1-94)

INSURED'S COPY      LMFAVORS    7-23-2013

UW00028



EXTENSION OF INFORMATION PAGE

PAGE        2

NAME AND ADDRESS OF INSURED

ABSOLUTE OIL FIELD SERVICES LLC
PO BOX 2020
SOUR LAKE, TX 77659-2020

POLICY NUMBER

SBP-0001227302 20130809

ISSUE DATE

7-23-2013

ITEM 1        **      LOCATIONS      **

| LOCATION NUMBER | ADDRESS |
| --- | --- |
| 00001 | ABSOLUTE OIL FIELD SERVICES LLC<br>4806 LITTLE ROCK RD<br>KOUNTZE, TX 77625-6592 |

FEDERAL ID: 800741849
EFFECTIVE: 8-09-2013    EXPIRES:  8-09-2014

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        August 9, 2013            at 12:01 A.M. standard time, forms a part of

Policy No.    SBP-0001227302 20130809        of the Texas Mutual Insurance Company

Issued to     ABSOLUTE OIL FIELD SERVICES LLC

Premium $            0.00

Endorsement No.        1

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY                    LMFAVORS      7-23-2013

UW00029